```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

PHL VARIABLE LIFE INSURANCE      *
  COMPANY
                                 *
     Interpleader Plaintiff
                                 *
     vs.                             CIVIL ACTION NO. MJG-16-387
                                 *
EDMUND T. BRODERICK,
Individually and as Trustee of   *
the Lowell S. Broderick
Revocable Trust, et al.          *

     Interpleader Defendants     *

*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT MOTIONS

The Court has before it Interpleader Defendant Edmund T. Broderick's Motion for Summary Judgment [ECF No. 54], the Motion for Summary Judgment filed by John Pompey [ECF No. 56], and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

I.  BACKGROUND

   A.  Summary of Pertinent Events

In 2005, Lowell Broderick ("Broderick") and John Pompey ("Pompey") formed Versa Tile Marble, LLC. ("the Company").

It is undisputed that, in 2005, PHL Variable Life Insurance Company ("PHL") issued two $1,000,000 life insurance policies – one on the life of Broderick ("the Broderick Policy") with

Pompey as beneficiary and the other on the life of Pompey ("the Pompey Policy) with Broderick as the beneficiary.[1]  It is also undisputed that the Company paid the premiums on both policies through 2009.

In 2009, Broderick and Pompey ended their business relationship.  On June 30, 2009, they entered into a Membership Interest Redemption Agreement ("MIRA") whereby Pompey purchased Broderick's membership in the Company for some $80,000 and proceeded to operate the business.  The MIRA said nothing about the life insurance policies.

On or about January 16, 2009, Broderick signed a document [ECF No. 54-10] that PHL and Broderick treated as changing the beneficiary on the Broderick Policy from Pompey to the Lowell S. Broderick Revocable Trust ("the Trust").[2]  Broderick thereafter paid the premiums on the Broderick policy until he died on March 3, 2015.

After Broderick's death, both Pompey and the Trust claimed entitlement to the Broderick Policy death benefits.  The critical issue is whether, in January 2009, Broderick

---

[1] There are, however, substantial disputes regarding the ownership and power to change beneficiaries of the Broderick Policy.
[2] On July 9, 2009, Broderick signed a document [ECF No. 54-12] that undisputedly changed the Pompey Policy beneficiary from Broderick to Pompey and Pompey's wife.  Thereafter, Pompey paid the premium on this policy at all times relevant hereto.

effectively changed the Broderick policy beneficiary from Pompey to the Trust.

B. <u>PROCEDURAL POSTURE</u>

PHL commenced this action by filing an Interpleader Complaint [ECF No. 1] against Pompey and Edmund T. Broderick ("Edmund") individually and as Trustee of the Trust.

Pompey filed an Answer [ECF No. 18] asserting that he was entitled to the benefits of the Broderick policy.[3]

Edmund filed an Answer [ECF No. 22], asserting that the Trust was entitled to the benefits of the Broderick policy.[4]

By agreement of all parties, the Court issued a procedural Order [ECF No. 44] providing that the Court would first proceed to determine whether Pompey or the Trust is entitled to the benefits of the Broderick policy.  After that determination is made, the case shall proceed with regard to such of the other claims as may remain pending.

Accordingly, the Court must now proceed to determine whether Pompey or the Trust is entitled to the proceeds of the Broderick policy.

---

[3]   Pompey also filed a document entitled "Verified Counter-Claim" [ECF No. 19] asserting certain claims against PHL, Edmund, the Trust and Daryl Watson (an insurance broker involved in obtaining the policies from PHL).
[4]   Edmund also asserted certain crossclaims against Pompey and counterclaims against PHL.

By the instant cross motions both Pompey and the Trust seek summary judgment establishing their right to the death benefits of the Broderick Policy.

II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The well-established principles pertinent to such motions can be distilled to a simple statement.

The Court may look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Cross motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist."  Lac Courte Oreilles Band of

Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983), cert. denied, 464 U.S. 805 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

The Court may grant summary judgment in favor of one party, deny both motions, or grant in part and deny in part each of the parties' motions. See Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983).

III. DISCUSSION

Following the hearing on the instant motions, the Court expressed concern that the record did not include a copy of, or the significant terms of, the policy at issue. By letter Order of January 24, 2017 [ECF No. 73], the Court directed the parties to file a copy of the Broderick policy if possible or a copy of the Pompey policy with a statement of how the Broderick policy would have differed. The Court further stated:

> If you do not have, or cannot get, a copy of either policy, PHL shall file a "content facsimile" of the policy – that is a document that reflects the content of the policy (for example, the form of policy used at the time). If this cannot be done, you shall either agree on, or PHL shall file an affidavit of a witness who can testify as to, the normally included contents

5

- clauses used at the pertinent time - in regard to what is stated with regard to the application, what is said regarding the definition of "primary owner" and "second owner" and their respective rights, and anything else that may be pertinent to the instant case.

In response, PHL submitted two identical "specimen policies." [ECF Nos. 74-1 and 79-1]. In light of the specimen policies, Pompey [ECF No. 78] and the Trust [ECF No. 80] submitted supplements to their summary judgment motions.

The Court, having considered the evidence of record, the gaps in the evidence, and the parties' arguments, concludes that there are genuine issues of material fact that prevent a decision for either side that would comply with the summary judgment standard.

The documents of record do not resolve the issues presented.

According to the specimen policies, the life insurance contract consists of the application and the policy. The policy owner is the person named as owner in the application, unless changed by written request. [ECF No. 79-1] at 7-8.

The Broderick Policy and Pompey Policy applications [ECF Nos. 56-3 and 56-9] are essentially identical in regard to ownership. Both indicate [5] in Section II - Ownership - that the proposed insured is not the owner, have a box checked that

---

[5] By not having a box checked that would indicate that the insured was the owner.

6

states "Owners Jointly" and list Broderick as the "Primary Owner" and Lowell as the "Second Owner.  The Section also has a box checked stating "Partnership" with Broderick and Pompey listed as "partners."

The policy acceptance form for the Broderick Policy [ECF 56-4] is signed by Broderick on an "Owner" line that states "If other than insured" although Broderick was the insured.

The policy acceptance form for the Pompey Policy [ECF No. 56-10] is signed on a "witness" line by Pompey.

The evidence of record includes a July 7, 2005 email chain relating to the Pompey Policy wherein a PHL "New Business" employee notes the application ownership ambiguity and asks Watson for clarification.  Watson, responds that the owner is Broderick.

There is no evidence of any such communication regarding the Broderick Policy ownership.  Of course, there can be a debate as to the inferences, if any, to be drawn as to the Broderick Policy since, as noted, the Broderick and Pompey applications were essentially identical as to ownership.

There is no evidence indicating what PHL's records reflected regarding the ownership of the Broderick and Pompey Policies or the reason for accepting the change of beneficiary of Broderick Policy without Pompey's agreement.

7

Moreover, there is a dispute whether Pompey was aware that there had been a 2009 change of beneficiary on the Broderick Policy.

In Watson's deposition:

> Q. What would you have explained to Mr. Pompey regarding his beneficiary status?
> A. Whenever there is a change of beneficiary, it's my practice to make sure that both parties understand how, in the event of their passing, who was going to receive the proceeds of that policy.
> Q. And so in 2009 you would have explained that to Mr. Pompey?
> A. That's correct.
> Q. And would you have explained that in regards to the Broderick policy as well?
> A. Yes.
> Q. And in regards to the Pompey policy?
> A. Yes.

Watson Dep. Tr. [ECF No. 54-11] at 90-91.

In Pompey's deposition:

> Q. And if I understood (sic) your testimony, you're saying if Lowell Broderick had come to you to ask you to sign something to change the beneficiary on Lowell Broderick's life insurance that you would not have signed it?
> A. No, I probably would have kept it going as the way it is and he could have got a different policy. Like I said, the situation never came up so it was not put to me that way. I was just thinking how, what I would have done in that situation. It was already in place, the payments were being paid.

Pompey Dep. Tr. [ECF No. 54-6] at 76-77.

>Q. And you don't recall any discussions with Lowell Broderick or Daryl Watson with regard to the Broderick policy, or either of the policies. Again, at the time of the transfer of his interest?
>
>A. Just say the question so it helps me think about this, John. I'm just not sure. Any conversation ever come up between Daryl and myself or Lowell and myself about the situation where ongoing with the life insurance. I don't recall it coming up. Doesn't mean it did not come up, but I just don't recall it coming up. I'm trying to think of how it would have come up and when it would have come up.

Pompey Dep. Tr. [ECF No. 54-6] at 77-78.

Deciding whether Pompey or the Trust is entitled to the Broderick Policy death benefit will necessitate drawing factual inferences from available documents, the contextual setting, the parties' intent, and the evaluation of relevant testimony regarding the communications between Broderick, Pompey, Watkins, and possibly other testimony. Thus, neither side can prevail on the summary judgment standard, wherein the evidence is viewed as the opponent wishes it viewed. The issue must be resolved by a bench trial decision in which the Court can make findings regarding disputed factual issues.

However, there need not be an extensive trial proceeding. The parties can agree to have the trial record include all that was submitted in regard to the instant motions. Supplemental evidence would be preened, including pertinent testimony and,

presumably, documents in addition to those submitted in regard to the instant motions.

IV. CONCLUSION

For the foregoing reasons:

1. Interpleader Defendant Edmund T. Broderick's Motion for Summary Judgment [ECF No. 54] is DENIED.

2. The Motion for Summary Judgment filed by John Pompey [ECF No. 56] is DENIED.

3. PHL shall arrange a telephone conference to be held by March 31, 2017, to discuss the scheduling of further proceedings.

SO ORDERED, this Thursday, March 16, 2017.

/s/
Marvin J. Garbis
United States District Judge